# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| CHINA LONON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV423-310 |
| | ) | |
| MATTHEW C. WILHOITE, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

*Pro se* plaintiff China Lonon has filed this case asserting claims arising from his 2016 arrest, prosecution, and 2017 conviction in Effingham County, Georgia. *See* doc. 1 at 1, 5, 7-9. The Court granted him leave to proceed *in forma pauperis*, doc. 4, and he returned the required forms, docs. 6 & 7. The Court, therefore, proceeds to screen his Complaint. *See* 28 U.S.C. § 1915A.

Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).

Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As Lonon is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

The majority of the allegations in Lonon's Complaint amount to legal conclusions concerning the validity of legal process issued against him. *See, e.g.,* doc. 1 at 5. However, to the extent that the Court can discern the underlying facts, Lonon alleges that defendant Matthew Wilhoite, identified as a "Rincon, GA Police Detective," procured warrants for his arrest "knowing he had no evidence to show he had probable cause." *Id.* Lonon alleges that the warrants were procured on April 26, 2016. *Id.* He also alleges that he was arrested by unidentified United States Marshals on that date, but before the warrants were issued. *Id.* at 7 (he states that the arrest was "based on heresay [sic] from [Defendant Wilhoite]" concerning the issuance of arrest warrants, but "[n]one were issued at the time of China Lonon's arrest by the U.S. Marshal's [sic]."). He alleges, without explanation, that the warrants "were fraudulently written after the false arrest and the false

2

imprisonment occurred." *Id.* at 7. On June 6, 2016, the Effingham County District Attorney, Defendant Deal, indicted Loncon, allegedly fraudulently. *Id.* at 7-8. He was convicted on April 4, 2017, again, allegedly fraudulently. *Id.* at 8. He contends that his continued confinement, based on that conviction, amounts to "false imprisonment." *Id.* at 9.

Lonon's allegations implicate both false arrest and malicious prosecution claims. Both "false arrest" and "malicious prosecution" are recognized claims, under 42 U.S.C. § 1983, for distinct violations of the Fourth Amendment. *See, e.g., Williams v. Aguirre*, 965 F.3d 1147, 1157-58 (11th Cir. 2020) (discussing distinct theories of "false arrest" and "malicious prosecution," under § 1983). "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "[F]alse imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 389. At that point, a plaintiff's claim is one for malicious prosecution. *Id.* at 390. The false arrest and imprisonment conclude, even if the process issued is allegedly invalid. *See, e.g., Carter v. Gore*, 557 F. App'x

3

904, 906 (11th Cir. 2014) ("The issuance of a warrant—even an invalid one . . . –constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest."); *see also, e.g., Williams*, 965 F.3d at 1158. Even crediting Lonon's allegations concerning the alleged defects in the warrants, any false arrest or false imprisonment claim is barred by the applicable statute of limitations.

Section 1983 claims are subject to the statute of limitations applicable to personal-injury torts under state law. *Wallace*, 549 U.S. at 387 (internal citation omitted). Under Georgia law, the statute of limitations for such claims is two years. O.C.G.A. § 9-3-33; *see also Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986). Generally, the statute of limitations for § 1983 claims begins to run when facts supporting the cause of action are or should be reasonably apparent to the plaintiff. *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (*per curiam*). As this Court has explained, "[t]he clock starts [on a false arrest claim] when the plaintiff 'is detained pursuant to a legal process." *Clifton v. Jeff Davis Cnty, Ga.*, 2017 WL 1347796, at *1 (S.D. Ga. Apr. 6, 2017) (quoting *Jones v. Union City*, 450 F. App'x 807,

809 (11th Cir. 2011)). Although the statute of limitations is often an affirmative defense, it is applicable at screening where it is apparent on the face of a complaint. *See, e.g., Jones v. Bock*, 549 U.S. 199, 215 (2007). Since legal process was instituted no later than June 2016, when Lonon was indicted, *see* doc. 1 at 7-8, the two-year period expired no later than 2018, more than five years before his Complaint was filed. *See* doc. 1 at 9 (Complaint was signature filed[1] on October 11, 2023). His § 1983 false arrest claim should, therefore, be **DISMISSED**.

Lonon's malicious prosecution claim also fails. "[T]he tort of malicious prosecution requires a seizure 'pursuant to legal process.'" *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016) (citation omitted). "[S]eizures following an arraignment, indictment, or probable-cause hearing," give rise to malicious prosecution claims. *Williams*, 965 F.3d at1158 (citation omitted). In order to establish a § 1983 malicious prosecution claim, "a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth

---

[1] As a prisoner, Lonon is entitled to the benefit of the "prison mailbox rule," under which a prisoner's pleadings are deemed filed on the day he submits them to prison authorities for mailing. *See, e.g., Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). Ordinarily, the Court presumes that a filing was submitted for mailing on the date it was signed. *Id.*

5

Amendment right to be free of unreasonable seizures." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) (citation and quotation marks omitted); *see also Williams*, 965 F.3d at 1157 ("[T]his Court uses 'malicious prosecution' as only 'a shorthand way of describing' certain claims of unlawful seizure under the Fourth Amendment."). The elements of the common law tort of malicious prosecution include: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Paez*, 915 F.3d at 1285 (citation omitted). A malicious prosecution claim does not accrue until the favorable termination occurs. *See, e.g., Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994). Lonon's convictions were affirmed by the Georgia Court of Appeals in 2019. *See Lonon v. State*, 823 S.E.2d 842 (Ga. App. Ct. 2019). There is no indication, and indeed no allegation, that the criminal proceedings against Lonon have terminated in his favor. His malicious prosecution claim, therefore, fails.

His § 1983 malicious prosecution claim should, therefore, be **DISMISSED**.

Lonon also asserts claims for false arrest and malicious prosecution under Georgia law. *See* doc. 1 at 7-8 (citing O.C.G.A. §§ 51-7-1, 51-7-40). There is no independent basis for the Court to exercise jurisdiction over any state law claims, however. *See, e.g., Williams v. Morales*, 2018 WL 2087247, at *3 (S.D. Ga. May 4, 2018). Since Lonon has not alleged any viable federal claim, the Court should decline to exercise supplemental jurisdiction over any state-law tort claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see also, e.g., Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) ("[I]f the federal claims are dismissed prior to trial, [*United Mine Workers v.*] *Gibbs* strongly encourages or even requires dismissal of state claims." (internal

quotation marks and citations omitted)). Those claims should, therefore, be **DISMISSED**.[2]

Even if Lonon's malicious prosecution and false arrest or false imprisonment claims were not substantively meritless, Defendant Brian Deal, the District Attorney of Effingham County, is immune. *See* doc. 1 at 8-9 (alleging malicious prosecution against Defendant Deal). Prosecutors are immune from § 1983 liability where their alleged

---

[2] Lonon also cites to several Georgia criminal statutes. *See* doc. 1 at 7 (citing O.C.G.A. §§ 16-5-41, 16-10-20). His reasons for citing those statutes, given that he expressly recognizes that this is a "civil lawsuit," seeking monetary damages, *see id.* at 6, are unclear. However, to the extent that he is seeking to initiate a criminal prosecution of any defendant, such a claim fails. Private citizens are simply not permitted to initiate criminal actions in federal court. *See, e.g., Lopez v. Robinson,* 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution." (citing *Linda R. v. Richard V.*, 410 U.S. 614, 619 (1973) ("In American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."))); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("[A] private citizen has no authority to initiate a federal criminal prosecution."). The Court is also without authority to order the United States Attorney, or indeed any other law enforcement officer, to initiate a prosecution. *See, e.g., Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 379 (2nd Cir. 1973) (citations omitted) ("federal courts have traditionally and, to our knowledge, uniformly refrained from overturning, at the insistence of a private person, discretionary decisions of federal prosecuting authorities not to prosecute persons regarding whom a complaint of criminal conduct is made[,] . . . even in cases . . .where . . . serious questions are raised as to the protection of the civil rights and physical security of a definable class of victims of crime and as to the fair administration of the criminal justice system."). Such orders would violate the Constitution's separation of powers between the Executive and Judicial Branches. *See id.* at 379-80 (quotes and cite omitted) (the United States Attorney, although a member of the bar and an officer of the court, "is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case.").

malfeasance stems from their "function as advocate." *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999). They enjoy "absolute immunity for the initiation and pursuit of criminal prosecution," even when accused of perjury. *Id.; see also Imbler v. Pachtman*, 424 U.S. 409 (1976) (prosecutorial immunity applied to allegations prosecutor knowingly used perjured testimony and suppressed material evidence at trial); *Jackson v. Capraun*, 534 F. App'x 854, 859 (11th Cir. 2013) (prosecutor entitled to absolute immunity for initiating prosecution even if he did so with malicious intent); *Fullman v. Graddick*, 739 F.2d 553, 559 (11th Cir. 1984) (determining prosecutor entitled to immunity from § 1983 liability for allegedly conspiring to withhold evidence and to create and proffer perjured testimony).

Prosecutorial immunity "extends to a prosecutor's 'acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State.'" *Jones*, 174 F.3d at 1281 (citation omitted).

> Prosecutorial immunity applies, for instance, to the prosecutor's actions in initiating a prosecution and presenting the State's case. A prosecutor is immune for malicious prosecution. Prosecutors are immune for appearances before a court and conduct in the courtroom, including examining witnesses and presenting evidence in

9

> support of a search warrant during a probable cause hearing.

*Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) (citations omitted). Lonon's allegations against Deal fall squarely within the actions for which prosecutors are immune from suit. *See* doc. 1 at 7-9. Prosecutors are similarly immune from suits under Georgia law "for actions arising from the performance of their duties." Ga. Const., art. VI, § VIII, ¶ I(e); *see also Arnold on behalf of Arnold v. City of Hampton*, 2023 WL 3243913, at *19 (N.D. Ga. Mar. 16, 2023). That immunity provides an independently sufficient ground to dismiss Lonon's claims against Deal. However, since those claims should be dismissed for the reasons discussed above, Deal's immunity is moot.

In summary, Lonon's § 1983 false arrest or false imprisonment claims arising from his arrest and detention between April and June 2016 are time barred, and, therefore, fail to state a claim upon which relief can be granted. His § 1983 malicious prosecution claim fails to state a claim because he does not allege favorable termination. Those claims should, therefore, be **DISMISSED**. 28 U.S.C. § 1915A(b)(1). Since those claims are the only federal claims, the Court should decline to exercise supplemental jurisdiction over Lonon's state law claims and

they should also be **DISMISSED**. Since all of the claims asserted in the Complaint are irretrievably defective, it should be **DISMISSED** in its entirety. *See, e.g., Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015).

Finally, it is time for plaintiff to pay his filing fee. Based on the financial information available, it appears that Lonon had $0.00 in average monthly deposits to or balance in his prison trust account. *See* doc. 7 at 1. He, therefore, does not owe an initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) shall further set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full. In the event that plaintiff is transferred to another facility, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to his new custodian. The balance due from plaintiff shall be

collected by the custodian at all future facilities in accordance with the terms of this Order.[3]

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are

---

[3] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 21st day of November, 2023.

/s/ Christopher L. Ray
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA